UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MICHAEL E. DECKER, | ) | Case No. **17-50297** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| W. STEPHEN SCOTT, TRUSTEE FOR | ) | |
| MICHAEL E. DECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | |
| MICHAEL E. DECKER, | ) | |
| WINCHESTER ACCOUNTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

W. Stephen Scott, Trustee for Michael E. Decker (the "Trustee"), by counsel, for his Complaint against the Defendants, Michael E. Decker and Winchester Accounting, LLC, states as follows:

### Jurisdiction

1. Michael E. Decker ("Decker") filed a voluntary petition under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Virginia on March 30, 2017 (the "Petition Date"), commencing the captioned case (the "Case").

2. This proceeding arises under the Bankruptcy Code and arises in and is related to a case under the Bankruptcy Code. The Court has jurisdiction over this matter pursuant to 28

U.S.C. § 1334(b) and § 157(a).  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (H), and (O).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Parties

3. The Trustee is the trustee appointed in this Case pursuant to § 702(d) of the Bankruptcy Code and continues to serve in that capacity.

4. Decker is the debtor in the Case and was the sole stockholder of Winchester Accounting and Consulting, Inc. ("WAC") at the time of the commencement of the Case.

5. Winchester Accounting, LLC ("WA") is a limited liability company formed by Decker on or about August 21, 2017, as reflected in the records of the Virginia State Corporation Commission.  Upon information and belief, Decker is the sole member of WA and began operating an accounting business in the form of WA shortly after its formation.

## Count I:

## Avoidance of Transfers of Property Pursuant to § 549(a) of the Bankruptcy Code

6. The allegations set forth in paragraphs 1 through 5, above, are incorporated herein by reference.

7. Prior to the commencement of the Case, Decker sought to minimize the value and financial picture of WAC in order that he could preserve his interest in WAC after he filed his petition.  These acts were deliberate acts on his part.  Among the actions he took were (a) causing WAC's to incur new debt by the purchase of a brand new 2017 Ford 4X4 truck (the "Truck") for approximately $66,000.00, decreasing both the net value and the net income of WAC but providing no meaningful positive benefit to WAC, (b) causing WAC to make shareholder distributions to Decker in the net amount of $45,850.00 in the five (5) months before the Petition Date, and (b) intentionally and surreptitiously suppressing WAC's accounts

receivables and work-in-progress in order to fund the ongoing operations of WAC after the Petition Date.

8.  Pursuant to section 541(a) of the Bankruptcy Code, at the Petition Date, WAC and the proceeds, product, offspring, rents or profits of or from WAC (excepting only the earnings of Decker from services performed by him), and all interests the property acquired by WAC after the Petition Date became property of the estate. Despite having voluntarily filed a bankruptcy petition, after the Petition Date, Decker continued to use both pre-petition assets of WAC and post-petition income and assets of WAC for his own purposes.

9.  In his Schedule I filed with the Court in his Case, Decker stated under penalty of perjury that his monthly gross wages, salary and commissions were $7,500.00 per month, or a total of $90,000.00 per year. From the Petition Date to the date on which WAC ceased business operations, WAC should have paid Decker for his work during the almost five months from March 30 through August 21, 2017 not more than $37,500.00. Instead, without any approval or authorization from the Trustee or the Court, Decker paid himself a salary for this period totalling $132,000.00, and then an additional $8,250.00 between August 22, 2017 and December 31, 2017, in effect giving himself an unauthorized raise of $101,00.00. In addition to these payments, Decker also took "shareholder" distributions after the Petition Date in the amount of $32,500.00, a portion of which Decker paid to himself after he closed WAC and started his business operations under WA. A detailed list of salary disbursements and shareholder distributions made caused by Decker to be paid to him by WAC between March 30, 2017 and December 31, 2017 are attached hereto as **Exhibit A** and **Exhibit B**, respectively. It is worth noting that after being chastised by the Court at a Sepember 2017 hearing, Decker simply adjusted the financial records of WAC to recharacterize a $50,000.00 shareholder distribution as

3

earned income, in effect thumbing his nose at the Court. Furthermore, the excessive wages Decker caused to be paid by WAC to him cost WAC an additional $8,847.28 in Federal and Virginia employment taxes and in contributions to Decker's Simple IRA, as shown on **Exhibit C**. In all, Decker received direct wages, benefits and shareholder distributions of $127,345.28 without the authorization of the Trustee or the Court.

10.    At the closing of the business of WAC on or about August 21, 2017, WAC had a bank account balance of $12,115.91 and had accounts receivables of $52,453.00. Decker needed those funds and the other assets of WAC to pay his expenses as he started up WA's business operations. So, instead of turning over those funds and assets of WAC to the Trustee, he used those funds and assets to pay the expenses of WA, including the employee wages, employment taxes, and pension contributions, and utilities needed by WA to conduct business. In all, these transfers to WA totalled $19,698.58, as reflected the summary of the described transfers and in the General Ledger of WAC shown on **Exhibit D**.

11.    In addition, at the beginning of 2017, before the Petition Date, Decker caused WAC to pay a full 11 months of the monthly lease obligation for the office space occupied by WAC prior to its closing and thereafter for the remainder of 2017, occupied by WA. This payment was in the amount of $18,700.00, shown on a page of WAC's General Ledger, attached hereto as **Exhibit E**, representing eleven monthly payments of $1,700.00. Decker, acting through his newly created entity, WA, caused the use by WA of the office space that had been paid for by WAC without repayment to WAC during the last four months of 2017, which represented an unauthorized transfer of property of the estate to WA, beginning on September 1, 2017 and monthly thereafter through December 1, 2017 in the total amount of $6,800.00.

12. In January 2017, Decker also caused WAC to pay a full year's parking fees for WAC's use public parking, representing twelve months of $100.00 each. Decker, acting through WAC, caused WA to use the pre-paid public parking for its own use. The use by WA of the public parking without repayment to WAC represented yet another unauthorized transfer of property of the estate to Decker and WA, beginning on or about September 1, 2017 through December 1, 2017 in the amount of an additional $400.00. These payments made by WAC in January 2017 are also shown on the page of the General Ledger of WAC, attached hereto as **Exhibit E**.

13. The money paid by WAC for the post-petition payments to Ford Motor Credit on the vehicle loan Decker caused WAC to incur were solely for the benefit of Decker and not an essential operating expense of WAC. The payments made by WAC, two of which, in the total amount of $2,500.00 were made by WAC well after the close of its business, represented unauthorized transfers of property of the estate to Decker in the total amount of $11,000.00, as shown on **Exhibit F**. To the extent the two payments totalling $2,500.00 were made in satisfaction of an obligation of WA to Decker, those payments constitute unauthorized transfers of property of the estate to WA.

14. At the Petition Date, based on the sworn testimony of Decker and the records of WAC, WAC had accounts receivables in the amount of $47,05.00. These funds became property of the estate at the Petition Date. Although Decker has given conflicting statements about whether WAC recorded time spent on an engagement, it is not disputed that between the Petition Date and April 30, 2017, a total of 32 days, WAC's records show that WAC billed at least $91,432.00 to clients. For the period ending March 31, 2017, WAC had billed only $55,291.00 compared with billings of $113,34.50 in the same period of 2016. It is clear from WAC's

financial records that WAC had work in progess on the Petition Date and that Decker delayed the billing of that asset until after the Petition Date. Both the accounts receivables and the work in progress of WAC constituted property of the estate on the Petition Date. However, instead of turning those assets over to the Trustee, Decker used those funds to continue the operation of WAC, not for the benefit of his creditors, but for the benefit of Decker himself. The effect of this use was the unauthorized transfer of the proprty of the estate to Decker and WA.

15. Its General Ledger indicates that WAC had a bank account balance of $12,115.91 and had accounts receivables of $52,453.00 at the time it ceased business operations, both of which are property of the estate. In addition, according to the General Ledger and the 2017 Federal tax return, WAC had $5,186.09 in its checking account on December 31, 2017. To the extent that Decker caused the transfer of the WAC bank account balance and/or accounts receivables for his benefit or transferred those funds to or for the benefit of WA, whether shown on WAC's General Ledger or not, the transfers of those assets of WAC are each an unauthorized transfer of property of the estate to Decker and/or WA.

16. WAC also had paid a security deposit of $1,700.00 for the lease of the building it occupied, as reflected on the WAC General Ledger. WA has continued to utilize the benefit of that security deposit in its occupation of the same premises, which, in effect, resulted in a transfer of that security deposit to WA. In addition, the WAC General Ledger lists $8,528.94 in office equipment and furniture. WA and Decker have assumed possession and control of this property and in doing so, caused the transfer of the WAC office equipment and furniture to them.

17. Section 549(a) of the Bankruptcy Code provides that a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and is not authorized under the Bankruptcy Code or by the court. None of the transfers described in

paragraphs 7-16 herein (each a "Transfer and collectively, the "Transfers") are authorized under the Bankruptcy Code, were authorized by the Trustee, or were authorized by the Court. As a result, each of the Transfers is avoidable under section 549(a) of the Bankruptcy Code.

### Count II:

### Recovery of Avoided Transfers Pursuant to § 550(a) of the Bankruptcy Code

18. The allegations set forth in paragraphs 1 through 17 above, are incorporated herein by reference.

19. Decker is the initial transferee of the Transfers and/or the entity for whose benefit of each of the Transfers was made.

20. WA is the initial transferee of each of the Transfers paid directly to it on or after August 21, 2017 or the entity for whose benefit each of the Transfers made on or after August 21, 2017 was made.

21. Pursuant to section 550(a) of the Bankruptcy Code, to the extent that a transfer is avoided under section 549 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred or the value of such property from the initial transferee. Under section 550(a), the Trustee is authorized to recover each of the Transfers from Decker and/or from WA, to the extent the Transfers were also made to or for its benefit.

### Count III:

### Turn Over of Property of the Estate Pursuant to § 542(a)

22. The allegations set forth in paragraphs 1 through 17 above, are incorporated herein by reference.

23. The property of WAC is property of the estate. Pursuant to section 542(a) of the Bankruptcy Code, to the extent that Decker and/or WA have possession and control of the property of WAC, which property may include, accounts receivables, bank account balances,

rent deposits, and office equipment and furniture, Decker and WA are required deliver to the Trustee and account for the property or the value of such property.

WHEREFORE, the Trustee, by counsel, respectfully prays for a judgment against Decker that provides for (a) the avoidance of the Transfers pursuant to section 549 of the Bankruptcy Code; (b) a money judgment against Decker in the total amount of the avoided Transfers and a money judgment against WA in the total amount of the Transfers the Court determines was made to it or for its benefit, pursuant to section 550 of the Bankruptcy Code; (c) the disallowance or the subordination of any and all claims of Decker and WA arising under section 502(d) of the Bankruptcy Code until such time as the amounts awarded by the Court are paid in full; (d) an award of prejudgment interest on the judgment amounts at the maximum legal rate from the Petition Date until entry of the judgment pursuant to section 8.01-382 of the Virginia Code; (e) direction of Decker and WA, as may be applicable to turn over and account for property of the estate in their respective possession and control to the Trustee, (f) the award of costs and disbursements incurred by the Trustee in this proceeding; and (g) the award of such other relief as may be just and proper.

    W. STEPHEN SCOTT, TRUSTEE FOR
    MICHAEL E. DECKER

    By: /s/ William E. Callahan, Jr._____
        Counsel

William E. Callahan, Jr. Esquire (Va. Bar No. 37432)
LECLAIRRYAN, PLLC
1800 Wells Fargo Tower, Drawer 1200
Roanoke, Virginia 24006
Telephone: (540) 777-3068
Facsimile: (540) 510-3050
Email: william.callahan@leclairryan.com

    Counsel for the Trustee