# LEASE

THIS LEASE, made and entered into on this _15_ day of January, 2015, by and between City Meat Properties, LLC. hereinafter called "Landlord," and Winchester Accounting and Consulting, hereinafter called "Tenant."

WITNESSETH, that, for and in consideration of the rents, mutual covenants, and agreements hereinafter set forth, the parties hereto do hereby mutually agree as follows:

## 1.   DEMISED PREMISES

Landlord does hereby lease to Tenant, and Tenant does hereby lease from Landlord, for the term and upon the conditions hereinafter provided, premises consisting of approximately 1417 square feet of commercial space having an address of 207 N. Cameron Street, Winchester, Virginia 22601, (such premises and land upon which it is located being hereinafter collectively referred to as the "Premises"). The following items are included with the premises – cabinets, counters, and refrigerator. Tenant shall have the right to use the common elements of the kitchen, roof terrace, first floor lounge and meeting space for their personal use, their clients are not permitted to use the spaces without being accompanied by the Tenant(s).

## 2.   CONDITION OF THE PREMISES

The Premises shall be leased in "as-in" condition. ~~With the exception of Landlord to provide a lock for the door to the entry at the stairway and also a door with a lock between the tenant's space and the adjoining space at the back hall.~~

## 3.   TERM

Subject to and upon the terms and conditions set forth herein, or in any exhibit or addendum hereto, the term of this Lease, and therefore Tenant's and Landlord's obligations thereunder, shall commence on the ___1st___ day of February , 2015 (hereinafter called "Commencement Date"), and shall expire on the ___31st___ day of ~~March~~ January 2016 (hereinafter referred to as "Expiration Date"). Tenant has the right to renew this lease for an additional One (1) year terms by giving the Landlord 120 days notice of request to renew. After the initial option period, this lease shall automatically renew for year to year, the Option Periods, unless either party gives written notice to the other at least one hundred twenty (120) days prior to the termination of the then current term that the lease will not be renewed.

*[handwritten margin note: EXTEND TO JUNE 30 2016]*

## 4.   USE

Tenant will use and occupy the Premises solely for office use. The Premises may not be used for any other purpose without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Tenant may not use or occupy the Premises for any unlawful or hazardous purpose, including without limitation for any residential purpose. Tenant will comply with, and shall do nothing to violate, any and all present and

1

Exhibit C

future laws, ordinances, regulations, and orders of all governments, government agencies, and any other public authority having jurisdiction over the Premises.

### RENT

(A) Tenant's obligation to pay rent of any kind or nature, including Monthly Rent (as hereinafter defined) and additional rent, as may be henceforth specified in this Lease, shall begin on _____ 2 | | _____, 2015 and shall continue to remain an obligation of Tenant until completely satisfied.

Tenant will make all payments of rent by check, payable to Landlord. Rent shall be mailed to City Meat Properties, LLC at 205 N. Cameron Street, Winchester, Va. 22601, or to such other party or to such other address as Landlord may designate from time to time by written notice to Tenant, without demand. If Landlord shall at any time or times accept rent after it shall become due and payable, such acceptance shall not excuse delay upon subsequent occasions, or constitute, or be construed as, a waiver of any or all of Landlord's rights hereunder.

(B) The Premises is hereby leased at a Monthly Rent of One Thousand Seven Hundred ($1700.00) dollars which Tenant agrees to pay in lawful money of the United States, in advance on the first day of each calendar month during said term without any set off or deduction whatsoever, (said amount of monthly rent being hereinafter called "Monthly Rent"). The Monthly Rent shall be firm for the initial year of the Term and shall be increased annually to an amount equal to 103% of the prior year's rent during the second year and for each of the Option Periods. If the Commencement Date shall not be the first day of a calendar month, the rent payable for such fraction of a month shall be the monthly rent prorated on a daily basis.

## 5.   SECURITY DEPOSIT

Upon signing of the Lease and as a condition of this Lease, Tenant shall pay Landlord the sum of One Thousand Seven Hundred dollars ($1700.00) as security for the performance by Tenant of its obligations under this Lease. Absent a default by Tenant, the security deposit shall be returned to Tenant, less appropriate deductions, within thirty (30) days after the expiration date.

## 7.   UTILITIES AND SERVICES

Landlord will be responsible for the payment of all utilities and common area maintenance to include cleaning of common areas and bathrooms.

## 8.   REAL ESTATE TAXES

Real Estate Taxes are included in the Monthly Rent.

9.    ASSIGNMENT AND SUBLETTING

The terms of this Lease have been negotiated by Landlord and Tenant on the assumption that Tenant will be the occupant of the Premises for the full term.  The parties have therefore agreed that without Landlord's prior written consent, which consent will not be unreasonably withheld, Tenant shall have no right to transfer, assign, sublet, enter into license or concession agreements, or mortgage or hypothecate this Lease or Tenant's interest in the Premises or any part thereof.  Any attempted transfer, assignment, subletting, license or concession agreement or hypothecation shall be void and confer no rights upon any third person.  Any transfer of this Lease from Tenant by merger, consolidation, liquidation or otherwise by operation of law, including, but not limited to, an assignment for the benefit of creditors, shall be included in the term "assignment" for the purposes of this Lease and shall be a violation of the provisions hereof.

10.    MAINTENANCE OF PREMISES

In no event shall Tenant permit waste, and Tenant shall repair any injury or destruction to the Premises resulting from Tenant's misuse of the Premises.  Tenant will surrender the Premises broom clean and in the same order and condition in which they were on the Commencement Date, subject to ordinary wear and tear.  Landlord shall have no obligation to reimburse Tenant for any costs and expenses incurred by Tenant in performing and undertaking such responsibilities and obligations.

Landlord shall be obligated to maintain all structural elements of the Premises and Building, including without limitation, the structure and roof, and of Premises, as well as all Common Areas.

Landlord shall have reasonable access to the electric panel closet and the telephone/network switching closet and Tenant shall not place any furniture in a way to block access to these closets.

11.    ALTERATIONS

Tenant shall make no alterations, installations, additions or improvements (herein collectively called "Alterations") in or to the Premises without Landlord's prior written consent. Consent by Landlord to Tenant's Alterations shall not be unreasonably withheld, except that Landlord may withhold its consent for any reason with regard to Alterations requested by Tenant which affect the structure of the Premises or the mechanical, plumbing or electrical systems of the Premises except as permitted above. If any Alterations are made without the prior written consent of Landlord, Landlord may correct or remove the same, and Tenant shall be liable for any and all expenses incurred by Landlord in the performance of this work. All Alterations shall be made at Tenant's sole expense. Pursuant to the section of this Lease entitled "LIENS," if Tenant undertakes Alterations, Tenant shall not permit any mechanic's liens or materialmen's liens to be placed against the Premises or the real property on which it is located.

All Alterations to the Premises shall become and remain the property of Landlord, except that any Alterations installed in the Premises at the sole expense of Tenant other than replacements of fixtures and equipment of Landlord in place as of the date of this

0024

Lease which can be removed without causing material damage to the Premises, shall be and remain the property of Tenant. Tenant is authorized to add a large mail slot to the alley way door. The size, material, finish and location of the mail slot is to be approved by Landlord prior to installation.

Paragraph 11 shall be subject to the terms of paragraph 12.

12.   PERSONAL PROPERTY AND TRADE FIXTURES

Consistent with and pursuant to Tenant's approved use of the Premises, Tenant may install and locate in the Premises personal property and trade fixtures related to such use, provided such property or fixtures are not required to be affixed to the floor, walls, ceilings or the structural members of the Premises (in which case such property or fixtures shall be deemed "Alterations" for the purposes of this Lease). Tenant shall, however, remove all of its personal property and trade fixtures upon the expiration or earlier termination of the Lease.

In the event Tenant fails to remove its personal property and trade fixtures on or before the expiration, of the term of the Lease, then, at Landlord's election, such property shall be deemed to become the property of Landlord, or Landlord may remove such property at Tenant's cost and expense, and Tenant hereby agrees to promptly reimburse Landlord, as additional rent, for such costs and expenses of such removal together with any and all damages which Landlord may suffer and sustain by reason of the failure of Tenant to remove the same.

Tenant has the right to use the metal picture hangers currently installed in the space. The picture hanging system shall remain the property of the landlord.

13.   LIENS

If any mechanic's or other lien is filed against the Premises for work claimed to have been done for Tenant or materials claimed to have been furnished to Tenant or if any lien is filed against the Premises by operation of law or for failure of Tenant to pay for utilities or services rendered to Tenant at Tenant's request or to pay taxes of any kind and nature for which Tenant is directly responsible to pay to the taxing authority, such lien shall be discharged by Tenant, at its sole cost and expense, within thirty (30) days from the date Tenant receives written demand from Landlord to discharge said lien, by the payment thereof or by filing any bond if permitted or required by law. If Tenant shall fail to discharge any such lien, Landlord may, at its option, discharge the same and treat the cost thereof as additional rent, due and payable upon receipt by Tenant of a written statement of costs from Landlord. It is hereby expressly covenanted and agreed that such discharge of any lien by Landlord shall not be deemed to waive or release Tenant from its default under the Lease for failing to discharge the same.

Tenant will indemnify and hold harmless Landlord from and against any and all expenses, claims or damages incurred by Landlord, arising from any liens placed against the   Premises   and   the   land   upon   which   it   is   situated.

0025

14.   SIGNS AND ADVERTISEMENTS

No sign, advertisement or notice shall be inscribed, painted, affixed or displayed on any part of the outside or the inside of the Premises, including the windows and doors of the Demised Premises, without the written consent of the Landlord, which consent will not be unreasonably conditioned or withheld.

15.   TENANT'S RESPONSIBILITY FOR DAMAGE

Any and all injury, breakage, condition or damage of or to the Premises arising from any cause, done by Tenant or its agents, contractors, servants, employees, visitors and animals, or by individuals and persons making deliveries to or from the Premises, shall be repaired by Tenant at the sole expense of Tenant.

16.   LANDLORD'S RIGHT OF ENTRY FOR REPAIRS AND INSPECTIONS

Tenant will permit Landlord, or its representative, to enter the Premises, to exhibit the Premises to prospective purchasers and to prospective tenants at any time during the term of this Lease provided that one (1) day notice is given by Landlord to Tenant and that such entry does not unreasonably interfere with the operations of Tenant.  In addition, Tenant will permit Landlord, or its representative, to enter the Premises, at all reasonable times, without charge therefore to Landlord and without diminution of the Monthly Rent payable by Tenant, to examine and inspect the Premises.  Where Landlord reasonably decides to make repairs to the Premises as permitted by this Lease, Tenant will permit, upon one (1) day's notice, access to the Premises in order to make such repairs.  Landlord shall use reasonable efforts to minimize interference to Tenant's business making repairs, but Landlord shall not be required to perform the repairs at a time other than during normal working hours.

In the event of an emergency or as deemed necessary by the Landlord for access to building electrical distribution panels and the telephone/network switching closet(access to which shall not be blocked or obstructed in any way by Tenant), Landlord may enter the Premises without notice and take whatever actions and make whatever repairs are necessary to protect the Premises.

17.   INSURANCE RATING

The Tenant shall advise the Landlord in writing prior to any specialized activity or any materials being placed by Tenant on the Premises, which might result in an increase in the rate of fire insurance or other insurance otherwise payable on the Premises.  Upon receipt of the written notice, the Landlord shall take appropriate steps to determine whether such specialized activity or materials will result in an increased premium.

In the event any specialized activity conducted by Tenant, or any materials placed by Tenant on the Premises, result in an increase in the rate of fire insurance or other

0026

insurance payable on the Premises such difference within thirty (30) days of demand therefore by Landlord provided such demand includes evidence that such specialized activity or the existence of such material is the direct cause of the increase.

## 18.    INDEMNITY AND PUBLIC LIABILITY INSURANCE

(A)  Tenant agrees that it will indemnify and save harmless Landlord from any and all liability, damage, condition, expense, cause of action, suits, claims, judgments and cost of defense arising from injury to person or personal property in and on the Premises, or upon any adjoining walkways or sidewalks, which arise out of the negligence or willful misconduct or omissions of Tenant, its agents or employees.

(B)  Tenant agrees to maintain public liability insurance naming Landlord as additional insured insuring against personal injury or death in the amount of One Million Dollars ($1,000,000.00) per accident or occurrence and Ten Thousand Dollars ($10,000.00) per person, and for property damage in the amount of Three Hundred Thousand Dollars ($300,000.00) per accident, or in such greater amounts consistent with the then prevailing insurance coverage practice for risks comparable to those required to be insured hereunder, said insurance to be carried in a first-line insurance company licensed in the jurisdiction in which the Premises is located and said policy or certificate of insurance to be deposited with Landlord with provision for ten (10) days prior written notice of cancellation to Landlord.

(C)  Landlord agrees that it will indemnify and save harmless Tenant from any and all liability, damage, condition, expense, cause of action, suits, claims, judgments and cost of defense arising from injury to person or personal property in and about the Premises, or upon any adjoining walkways or sidewalks which arise as a result of the negligence or willful misconduct of Landlord, its agents or employees, or out of a breach of Landlord's obligations under this Lease.

## 19.    ALL RISK COVERAGE INSURANCE

Tenant shall obtain and maintain throughout the term of its Lease and any extension periods All Risk Coverage insurance (or similar) insuring against damage to and loss of Tenant's tenant improvements, fixtures, equipment, furniture, and all other personal property in and about the Premises.

## 20.    REQUIREMENTS FOR TENANT'S INSURANCE POLICIES

The company or companies writing any insurance which Tenant is required to carry and maintain or cause to be carried or maintained pursuant to this Lease shall be carried with companies which are AA rated and are licensed to write insurance in the state in which the Property is located.

Tenant's public liability coverage and All Risk Coverage insurance policies and certificates evidencing such insurance shall name Landlord and its Agent as additional insured and shall also contain a provision by which the insurer agrees that such policy shall not be canceled except after thirty (30) days' written notice to Landlord.

Tenant agrees to provide to Landlord prior to the Commencement Date current certificates evidencing such insurance. Said certificates shall be kept current throughout the term of the Lease.

21.    HAZARDOUS MATERIALS

(A)    Tenant represents and warrants to Landlord that (a) Tenant, its agents, employees and invitees shall not install, use, release or discharge any Hazardous Materials in, on or under the Premises at any time during its occupancy in violation of any applicable law, (b) Tenant shall not allow the storage of any Hazardous Materials except in complete compliance with any applicable local, state, and federal laws, ordinances, rules, regulations and orders, and Tenant has all permits and authorizations required for the use and operation of the Premises.

(B)    If Tenant breaches any of its obligations contained in this section, or if any act or omission of Tenant or any of its Agents, employees, contractors, invitees, assignees or sub-tenant causes any hazardous material to be discharged or released from, on or in the leased Premises, than Tenant shall indemnify Landlord against and hold Landlord harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities, losses, expenses (including, without limitation, attorney fees, consultant fees and expert fees arising during or after the term of this Lease as a result of that breach or that discharge or release. This indemnification includes, without limitation, costs incurred in connection with the investigation of site conditions or any cleanup, repair removal or detoxification work required by any federal, state or local governmental agency or political subdivision. Without limiting the foregoing, if the presence of any hazardous material in or on the Premises caused by the Tenant or any of Tenant's agents, employees, contractors, invitees, assignees, or subTenant result in any discharge or release of hazardous material from, in, or on the leased Premises, Tenant shall promptly take all action, at its sole expense, necessary or appropriate to return the Premises to the condition existing before that discharge or release. However, prior to taking any such remedial action, Tenant shall first obtain Landlord's prior approval, including, without limitation, approval of any contractors Tenant proposes to hire to perform the remedial work, which approval Landlord shall not unreasonably withhold, so long as Tenant demonstrates to Landlord's satisfaction that the remedial action would not have any significant adverse long-term or short-term effect on the leased Premises.

(C)    Landlord shall indemnify, defend protect and hold harmless Tenant and each of Tenant's partners, directors, officers, employees, agents, successors and assigns, for any damage, injury, condition or claim arising from or caused by Landlord's failure to comply with any Hazardous Materials Laws which result in the presence in, on, under or about the Premises or Building, or any discharge or release in or from the Premises or Building, of any Hazardous Materials.

(D)    As used herein, the term "Hazardous Materials Laws" shall mean any and all federal, state and local laws, ordinances and regulations relating to environmental protection or the use, analysis, generation, manufacture, storage, presence, disposal or transportation of any "Hazardous Materials" (as hereinafter defined). As used herein, the term "Hazardous Materials" shall mean any oil, flammable explosives, asbestos, urea

7

formaldehyde, radioactive materials or waste, or other hazardous, toxic, contaminated or polluting materials, substances or wasters, including, without limitation, any "hazardous substances," "hazardous wastes," "hazardous materials" or "toxic substances" as defined under any Hazardous Materials Laws.

## 22.   LIABILITY FOR DAMAGE TO PERSONAL PROPERTY AND INJURY TO PERSON

All personal property of Tenant, its employees, agents, business invitees, licensees, customers, clients, family members, guests or trespassers, in and on the Premises, shall be and remain in and on the Premises at the sole risk of said parties and Landlord shall not be liable to any such person or party for any damage to or loss thereof from or due to any cause. Tenant agrees to save Landlord harmless in all such cases.

Landlord shall not be liable for any personal injury to Tenant, Tenant's employees, agents, business invitees, licensees, customers, clients, family members, guests or trespassers arising from the use, occupancy and condition of the Premises, unless the injury is caused by the negligence, gross negligence or intentional misconduct of Landlord, it's agents or employees.

## 23.   DAMAGE TO THE PREMISES AND/OR THE DEMISED PREMISES

(A)   If, as the result of fire, the elements, accident or other casualty (collectively, a "Casualty"), the Premises shall be rendered wholly or partially untenantable (damaged to such an extent as to preclude Tenant's use of the Premises for the purposes originally intended), then subject to the provisions of subparagraph (B), Landlord shall cause such damage to be repaired, including any leasehold improvements, and the Monthly Rent and additional rent shall be abated proportionately as to the portion of the Premise rendered untenantable during the period of such untenantability. All such repairs shall be made at the expense of Landlord.

If the Premises shall be damaged by Casualty, but the Premises shall not be thereby rendered wholly or partially untenantable, Landlord shall promptly cause such damage to be repaired and there shall be no abatement of rent reserved hereunder.

(B)   If the Premises are (a) rendered wholly untenantable, or (b) if the Premises is damaged to the extent of fifty percent (50%) or more of the leasable area thereof, then, in such event, Landlord or Tenant may elect to terminate this Lease by giving the other party notice of such election within thirty (30) days after the occurrence of such event. If such notice is given, the rights and obligations of the parties shall cease as of the date of such Casualty, and the Monthly Rent and additional rent shall be adjusted as of the date set forth in such notice, or, if the Premises were rendered untenantable, as of the date of Casualty.

Within fifteen (15) days following a Casualty, Landlord shall notify Tenant in writing of the date on which Landlord, in its best professional judgment, estimates restoration will be substantially completed. If restoration is expected to exceed ninety (90) days from the date of Landlord's notice, the Tenant shall have the right to terminate this Lease on written notice to Landlord within fifteen (15) days after receipt of Landlord's notice.

0029

In the event Landlord repairs and restores the Premises as herein above described, the abatement of Monthly Rent shall cease from the date that the Premises is substantially repaired and restored to its previous condition.

24.   DEFAULT OF TENANT

(A)  The occurrence of any one or more of the following events shall constitute a default hereunder by Tenant:

(i)   The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of ten (10) days after written notice thereof has been provided to Tenant by Landlord.

(ii)   The failure by Tenant to observe or perform any of the other express covenants or provisions of this Lease to be observed or performed by Tenant, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant shall commence such cure promptly and shall thereafter diligently prosecute such cure to completion.

(iii)   An Event of Bankruptcy as defined in Paragraph 36 of this Lease entitled "BANKRUPTCY."

(iv)   A dissolution or liquidation of Tenant.

(B)   Upon the occurrence of a default by Tenant, Landlord shall have the right, then or at any time thereafter:

(i) without demand or notice, to reenter and take possession of all or any part of the Premises, to expel Tenant and those claiming through Tenant and to remove any property therein, either by summary proceedings or by any other action at law, in equity or otherwise, with or without terminating this Lease, without being deemed guilty of trespass and without prejudice to any other remedies of Landlord for breach of this Lease, and/or

(ii) to give Tenant written notice of Landlord's intent to terminate this Lease, and on the date specified in Landlord's notice, Tenant's right to possession of the Premises shall cease and this Lease shall terminate.

(C)   In the event of any such default by Tenant, Landlord may recover from Tenant:

(i) All rents which have accrued but remain unpaid as of the date of such termination; plus

0030

(ii) all rents due and owing under said Lease for the term of said Lease, discounted for present value, less the proceeds of any re-letting of the Premises (after deducting all actual costs and expenses of such re-letting).

(iii) The amount necessary to compensate Landlord for reasonable court costs, reasonable attorney's fees, brokerage commissions and the cost of repairing damages to the Premises, incurred by Landlord as a result of the default by Tenant,

(iv) as a separate item and without limiting the generality of (i) through (iii) above, Landlord shall have the right to recover from Tenant a prorata portion of all rent abated during any rent abatement or rent free period and the cost of any leasehold improvements installed in the Premises at Landlord's expense, and a prorata portion of any brokerage commission(s) paid to any real estate broker or agent by Landlord in conjunction with the initial leasing go the Premises to Tenant.

(D)    In the event of any such default by Tenant, Landlord shall also have the right, to terminate this Lease, and to reenter the Premises and remove all persons and property from the Premises; such property may be removed and stored in a public warehouse or elsewhere at the cost of and for the account of Tenant. No re-entry or taking possession of the Premises by Landlord pursuant to this subsection (D) shall be construed as an election to terminate this Lease unless a written notice of such intention is given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

(E)    Tenant waives any right of redemption, re-entry or restoration of this Lease and its operation under present or future law.

25.   WAIVER

No waiver by Landlord of any breach of any covenant, condition, or agreement specified herein shall operate as an invalidation or as a continual waiver of such covenant, condition or agreement itself, or of any subsequent breach thereof. No payment by Tenant or receipt by Landlord (or any party designated by Landlord to receive any payments of rent) of a lesser amount than the amount of the rent due shall be deemed to be other than payment on account of the earliest stipulated rent. In addition, no endorsement or statement on any check or letter accompanying a check for payment of such rent shall be deemed an accord and satisfaction. Landlord, or any party designated by Landlord, may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or to pursue any other remedy provided for in this Lease or in the governing law of the jurisdiction in which the Premises is located. No re-entry by Landlord and no acceptance by Landlord of keys from Tenant shall be considered an acceptance of a surrender of the Lease.

26.   SUBORDINATION

This Lease is subject and subordinate to the lien of all and any mortgages (which term "mortgages" shall include both construction and permanent financing and shall include deeds of trust and similar security instruments) which may now or hereafter encumber or otherwise affect the Premises, and to all and any renewals, extensions, modifica-

tions, recastings or refinancing thereof. Upon confirmation of such subordination, Tenant shall, at Landlord's request, promptly execute any requisite or appropriate certificate or other document. Tenant hereby constitutes and appoints Landlord as Tenant's attorney-in-fact to execute any such certificate or other document for or on behalf of Tenant if Tenant does not execute said certificate or document within ten (10) days of receipt thereof.

Tenant agrees that in the event that any proceedings are brought for the foreclosure of any such mortgage, and the Lease is not terminated by the mortgage holder, Tenant shall attorn to the purchaser at such foreclosure sale (or deed in lieu of foreclosure), if requested to do so by such purchaser. Tenant shall also recognize any purchaser of the Premises as Landlord under this Lease. Tenant waives the provisions of any statute or rule of law, now or hereafter in effect, which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease and the obligations of Tenant hereunder in the event that any such foreclosure proceeding (or deed in lieu thereof) is prosecuted or completed.

Notwithstanding the foregoing, as a condition of such subordination, Landlord shall obtain a nondisturbance agreement in favor of Tenant from any mortgage or the holder of any deed of trust or other lien on the Premises, which recognizes this Lease in the event of a foreclosure.

## 27. CONDEMNATION

If the whole or part of the Premises is taken for public or semi-public use, by condemnation or conveyance in lieu of condemnation, then the rent shall be decreased in proportion to the portion of the Premises is so taken. If such taking renders the Premises untenantable, this Lease shall thereupon terminate and any or all obligations shall be declared null and void. All proceeds paid for any such taking shall belong solely to the Landlord; provided however, that Tenant may assert any claim it may have against the condemning authority for compensation for Tenant's personal property or trade fixtures, loss of income and for any relocation expenses which may be compensable provided that such awards do not diminish the award recoverable by Landlord.

## 28. LATE CHARGES

Any installment of Monthly Rent not received by the first day of the month then due shall incur a late fee in the amount of $75.00.

Any installments of Monthly Rent or other charges to be paid by Tenant pursuant to this Lease, including attorney's fees, which are not paid by Tenant within ten (10) days after the same becomes due and payable, shall bear interest at a rate equal to five (5) percentage points above the then prime rate of interest as fixed by Wall Street Journal accruing from the date such installment or payment became due and payable to the date of payment thereof by Tenant. Such interest shall constitute additional rent due and payable to Landlord by Tenant upon the date of payment of the delinquent payment referenced above.

11

0032

tions, recastings or refinancing thereof. Upon confirmation of such subordination, Tenant shall, at Landlord's request, promptly execute any requisite or appropriate certificate or other document. Tenant hereby constitutes and appoints Landlord as Tenant's attorney-in-fact to execute any such certificate or other document for or on behalf of Tenant if Tenant does not execute said certificate or document within ten (10) days of receipt thereof.

Tenant agrees that in the event that any proceedings are brought for the foreclosure of any such mortgage, and the Lease is not terminated by the mortgage holder, Tenant shall attorn to the purchaser at such foreclosure sale (or deed in lieu of foreclosure), if requested to do so by such purchaser. Tenant shall also recognize any purchaser of the Premises as Landlord under this Lease. Tenant waives the provisions of any statute or rule of law, now or hereafter in effect, which may give or purport to give Tenant any right to terminate or otherwise adversely affect this Lease and the obligations of Tenant hereunder in the event that any such foreclosure proceeding (or deed in lieu thereof) is prosecuted or completed.

Notwithstanding the foregoing, as a condition of such subordination, Landlord shall obtain a nondisturbance agreement in favor of Tenant from any mortgage or the holder of any deed of trust or other lien on the Premises, which recognizes this Lease in the event of a foreclosure.

## 27.   CONDEMNATION

If the whole or part of the Premises is taken for public or semi-public use, by condemnation or conveyance in lieu of condemnation, then the rent shall be decreased in proportion to the portion of the Premises is so taken. If such taking renders the Premises untenantable, this Lease shall thereupon terminate and any or all obligations shall be declared null and void. All proceeds paid for any such taking shall belong solely to the Landlord; provided however, that Tenant may assert any claim it may have against the condemning authority for compensation for Tenant's personal property or trade fixtures, loss of income and for any relocation expenses which may be compensable provided that such awards do not diminish the award recoverable by Landlord.

## 28.   LATE CHARGES

Any installment of Monthly Rent not received by the first day of the month then due shall incur a late fee in the amount of $75.00.

Any installments of Monthly Rent or other charges to be paid by Tenant pursuant to this Lease, including attorney's fees, which are not paid by Tenant within ten (10) days after the same becomes due and payable, shall bear interest at a rate equal to five (5) percentage points above the then prime rate of interest as fixed by Wall Street Journal accruing from the date such installment or payment became due and payable
to the date of payment thereof by Tenant. Such interest shall constitute additional rent due and payable to Landlord by Tenant upon the date of payment of the delinquent payment referenced above.

0033

29.   AGENT

Landlord appoints and Tenant recognizes, until such time as Landlord otherwise notifies Tenant in writing, NONE, as Landlord's exclusive agent (herein referred to in this Lease as "Agent") for the management and operations of the Premises and for the service of process, issuance and receipt of all notices, and instituting and processing all legal actions on behalf of Landlord under this Lease.

30.   WAIVER OF JURY TRIAL/NOTICE TO QUIT

Landlord and Tenant hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on or in respect of any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant hereunder, Tenant's use or occupancy of the Premises,      and/or      any      claim      of      injury      or      damage.

31.   ENFORCEMENT OF LEASE

In the event either party is required or elects to take legal action to enforce against the other party the performance of the other's obligations under this Lease, then the prevailing party shall immediately recover from the other nonprevailing party all expenses, including, without limitation, reasonable attorney's fees, incurred by such prevailing party in its successful prosecution and/or defense of that legal action.

32.   NOTICES

All notices or other communications hereunder shall be in writing and shall be deemed duly given if delivered in person, by certified mail, return receipt requested, or by registered mail, postage prepaid: (i) if to Landlord at 205 N. Cameron Street, Winchester, Virginia 22601 and if (ii) if to Tenant, at 207 North Cameron Street, Winchester, Virginia 22601. The party to receive notices and the place notices are to be sent for either Landlord or Tenant may be changed by notice given pursuant to the provisions of this section.

33.   ESTOPPEL CERTIFICATES

Tenant agrees, at any time and from time to time, upon not less than five (5) days' prior written notice by Landlord, to execute, acknowledge and deliver to Landlord a statement in writing: (i) certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the Lease is in full force and effect as modified and stating the modifications); (ii) stating the dates to which the rent and other charges hereunder have been paid by Tenant; (iii) stating whether or not, to the best knowledge of Tenant, Landlord is in default in the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default of which Tenant may have knowledge; (iv) stating the address to which notices to Tenant should be sent and, if Tenant is a corporation, the name of its registered agent in the jurisdiction in which the Premises is located; and (v) agreeing not to pay rent more than thirty (30) days in advance or to amend the Lease without the consent of the mortgage lender. Any such statement delivered pursuant hereto may be relied upon by any owner of the Premises, any prospective purchaser of the Premises, any mortgagee or prospective mortgagee of the Premises or of Landlord's interest, or any prospective assignee of any such mortgage.

34.   HOLDING OVER

In the event that Tenant shall not immediately surrender the Premises on the date of expiration of the term of this Lease, Tenant agrees to pay to Landlord a Monthly Rent equal to 150% the amount of the Monthly Rent in effect during the last month of the term of this Lease unless Landlord and Tenant are currently negotiating a renewal of this Lease.

In the event that Tenant shall hold over after the expiration of the term of the Lease or extension period thereof, and if Landlord shall desire to regain possession of the Premises promptly at the expiration of the term of this Lease, or the expiration of the extension period thereof, then at any time prior to Landlord's acceptance of Monthly Rent from Tenant pursuant to this Section, Landlord, at is option, may forthwith re-enter and take possession of the Premises without process, or by any legal process in force in the jurisdiction in which the Premises is located.

35.   BENEFIT AND BURDEN

The terms and provisions of this Lease shall be binding upon and shall inure to the benefit of the parties hereto and each of their respective representatives, successors and permitted assigns. Landlord may freely and fully assign its interest hereunder. In the event of any sale or transfer of the Premises, by operation of law or otherwise, by the party named as Landlord hereunder (or by any subsequent successor, transferee or assignee) then said party whose interest is thus sold or transferred shall be and is completely released and forever discharged from and in respect to all covenants, obligations and liabilities as Landlord hereunder after the date of such sale or transfer.

36.   BANKRUPTCY

If Tenant shall become bankrupt or insolvent or unable to pay its debts as such become due, or file any debtor proceedings or if Tenant shall take or have taken against either party in any court pursuant to any statute either of the United States or of any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or if Tenant makes an assignment for the benefit of creditors, or petitions for or enters into an arrangement, then this Lease shall terminate and Landlord, in addition to any other rights or remedies it may have, shall have the immediate right of reentry and may remove all persons and property from the Premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Tenant, all without service of notice or resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby.

0035

37.   SAVINGS CLAUSE

If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be held invalid, then the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby, and each provision of the Lease shall be valid and enforced to the fullest extent permitted by law.

38.   GOVERNING LAW

This Lease and the rights and obligations of Landlord and Tenant hereunder shall be governed by the laws of the Commonwealth of Virginia.

39.   JOINT AND SEVERAL LIABILITY

If two or more individuals, corporations, limited liability companies, partnerships or other business associations (or any combination of two or more thereof) shall sign this Lease as Tenant, or shall subsequently become Tenant hereunder, the liability of each of them shall be joint and several.

40. GUARANTOR

This lease is personally guaranteed by Michael Decker.

41.   ENTIRE AGREEMENT

This Lease, and any addendum attached hereto and made a part hereof contains and embodies the entire agreement of the parties hereto, and no representations, inducements, or agreements, oral or otherwise, between the parties not contained and embodied in said Lease, and any addendum shall be of any force and effect, and the same may not be modified, changed or terminated in whole or in part in any manner other than by an agreement in writing duly signed by all parties hereto.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be signed in their names by their duly authorized representatives and delivered as their act and deed, intending to be legally bound by its terms and provisions.

LANDLORD:
CITY MEAT PROPERTIES, LLC
BY: _Elizabeth Neale_

Date: _1-15-15_
Title: _2:45 PM_

14

0036

TENANT:
WINCHESTER ACCOUNTING AND CONSULTING
BY: _Michael Decker_____
Michael Decker


Date:___1/15/15_____
Title:_President_____

0037